[Rea, pro ami, v. Longstreet & Sedgwick.]

# Rea, *pro ami*, *v.* Longstreet & Sedgwick.

## Bill in Equity to remove Cloud on Title.

1. *Cloud on title; jurisdiction of equity to remove and prevent.*—A court of equity will not only order the cancellation of deeds or other instruments, by which a cloud is cast on the title, injurious to the true owner, but will interfere by preventive remedies, whenever a fixed determination is evinced to make a sale, which, if made, will cast a cloud upon the title, injuring the owner, and which it would be unconscientious to suffer made, as a source of title adverse to him.

2. *Same; test for determining.*—The true test to determine whether an instrument casts a cloud on the title, is this: "Would the owner of the property, in an action of ejectment by the adverse party founded on the deed, be required to introduce evidence to defeat a recovery?" If such proof would be necessary, the cloud would exist; if the action would fall of its own weight, without proof in rebuttal, no occasion would arise for equitable interference.

3. *Same; what constitutes cloud.*—A deed void on its face presents no ground for equitable interference; nor does the sale of the land as the property of a mere stranger, with whom the true owner is not connected, and from whom he does not, mediately or immediately, derive title.

4. *Same; bill to remove, when without equity.*—A bill by a married woman showing that, with moneys of her statutory estate, she purchased lands, and received a conveyance direct from a third person—the husband not being connected with the consideration, the title, or its conveyance —and seeking to prevent a sale of the land, under judicial process against her husband, is without equity; for such a sale would not cloud her title.

5. *Decree; when cannot be supported.*—If the allegations of the bill do not authorize the relief prayed, a decree in complainant's favor cannot be supported, although the evidence may show that she is entitled to relief.

6. *Title; remedy to test rightfulness of levy on land.*—A motion to set aside the levy of an attachment on land, can only be made by a party or privy to the process; and it is only as to personalty that a trial of the right of property can be claimed; and where lands of one person have been levied on, under execution against another, a resort to either remedy, by the party claiming the land, for the purpose of testing the title, would be an anomaly in judicial proceedings.

APPEAL from Chancery Court of Chambers.

Heard before Hon. B. B. McCRAW.

The appellant, Mary L. Rea, filed this bill against Longstreet & Sedgwick, and others of her husband's creditors, who, under attachments against his estate, had levied on, and were proceeding to sell her lands.

The bill alleges that complainant, with moneys of her statutory estate, purchased the lands from one Jane Rea, and received a conveyance direct to herself, which was duly recorded in 1870; that in 1872 appellees, creditors of her husband, commenced suit against him in a court of law, for his

| | |
|---|---|
| 54 | 291 |
| 93 | 227 |
| 93 | 399 |
| 54 | 291 |
| 98 | 191 |
| 54 | 291 |
| 99 | 459 |
| 54 | 291 |
| 101 | 563 |
| 54 | 291 |
| 105 | 450 |
| 54 | 291 |
| 107 | 480 |
| 54 | 291 |
| 115 | 586 |
| 54 | 291 |
| 119 | 302 |
| 54 | 291 |
| 121 | 212 |
| 54 | 291 |
| 125 | 341 |
| 54 | 291 |
| 128 | 473 |

debt, under which attachments were levied on her lands;
that she had sold said lands and given bond for title, on pay-
ment of the purchase money; that the purchaser refused to
pay the purchase money on account of the levy of the at-
tachments, and that the levy of said attachment cast a cloud
upon her title, and prevented the consummation of the sale
to the purchaser, &c.

The bill prayed that the levy of said attachments upon
the lands, be set aside and annulled, and that the appellees
be perpetually enjoined from selling the lands under the at-
tachments.

The answers admit the execution of the deed by Jane
Rea to the complainant, and also the levy of the attachments
upon the lands. They deny, however, that complainant paid
any consideration for the lands, and aver· that her husband
being at the time insolvent and contemplating bankruptcy,
conveyed the lands in controversy, which he then owned, to
appellant's grantor, and that the several conveyances from
him to Jane Rea, and from her to appellant, were fraudulent
transactions, entered into by the parties with the intent to
hinder, delay and defraud appellees and other creditors of
appellant's husband.

The answers also set up other matters of defense, not ma-
terial in the view which the court took of this case.

The cause was submitted on bill, answers and testimony,
and the chancellor dismissed the bill without prejudice;
hence this appeal.

W. H. DENSON, for appellant.—The case made shows an
attempt to subject the statutory estate of the wife to the
payment of the husband's debt.—*Bibb v. Pope*, 43 Ala. 201.
The proceeding is therefore unauthorized and inequitable.
The attachments are clouds upon the title of appellant and
she can resort to equity to remove this cloud, and to prevent
the still greater cloud which would have been cast on the
title, if a sale had been made under. the attachments.—
11 Ala. 295; 1 Johns. Ch. 517; 47 Ala. 317.

E. G. RICHARDS, and J. J. ROBINSON, *contra.*

BRICKELL, C. J.—It is settled that courts of equity
have jurisdiction to remove a title, or claim of title, which
may operate as a cloud upon the title of the true owner,
from which an injury to him · may be reasonably appre-
hended; and for that purpose may decree that deeds, or
other instruments, by which such cloud is created, shall be

given up and cancelled.—2 Story's Eq. § 700; Willard's Eq. 302; *Hamilton v. Cummings*, 1 Johns. Chan. 516; *Pettit v. Shepherd*, 5 Paige, 50; *Lyon v. Hunt*, 11 Ala. 295; *Posey v. Conway*, 10 Ala. 811.

The principle is extended so as to authorize equitable interference, when a party evinces a fixed determination to make a sale, which, if made, will cast a cloud upon the title, injuring the owner, and which it would be against conscience to suffer made, as a source of title adverse to him.—*Pettit v. Shepherd, supra*; *Tucker v. Kenniston*, 47 N. H. 270; *Kimberly v. Sells*, 3 Johns. Chan. 471; *Bank U. S. v. Schulty*, 2 Ohio, 505; *Key City Gas Light Co. v. Munsell*, 19 Iowa, 306; *Christie v. Hale*, 46 Ill. 117; *Pixley v. Huggins*, 15 Cal. 127. Every conveyance from the grantor, through whom the party complaining deduces title, not void on its face, but the invalidity of which can be made apparent only on evidence of extrinsic facts, necessarily casts a cloud upon the title. It will embarrass the alienation of the estate, and freedom of alienation it is the policy of the law to promote. It will render the true owner uneasy in the possession and enjoyment of the estate, because it may at any time be the foundation of litigation; and it awakens suspicions of his title in the minds of others, though when the facts are developed its invalidity may be as apparent as if written on its face. These facts may rest, to a great degree, in the memory of witnesses, who may be dispersed, or may die; or they may be obscured by the wearing away of human remembrance. The litigation arising when the facts in controversy are of recent occurrence and fresh in the minds of witnesses, can be always more justly determined than that arising after a long lapse of time. It is better for all parties in interest, better for the community, that disputed titles to real estate should be speedily quieted. A decree of the court of chancery quieting the title, gives to the true owner a sense of security, higher than that he would derive from the most solemn conveyance, though it may add nothing in law to its validity. It inspires in others a confidence in the title they would not extend to another not having received judicial sanction. If the adverse title is superior to that of the party in possession, the decree pronouncing its superiority removes all cause for future litigation; gives to it its real value; while without it the value is merely speculative; its transfer champertous; and it leaves the alienation and descent of the estate clouded and uncertain.

The authorities are not very harmonious on the power of a court of equity to intervene to prevent a cloud on the title, by sales under judicial process, against one who has no title.

[Rea, pro ami, v. Longstreet & Sedgwick.]

When no question of fraud arises, and it is only a matter of superiority of title, deduced from the same source, the decisions of this court have conclusively settled, that the power exists, and should be exercised.—*Burt v. Cassety*, 12 Ala. 734; *Downing v. Mann*, 43 Ala. 266; *Martin v. Hewitt*, 44 Ala. 418. Whether, when a creditor acting in good faith, having reason to believe that a conveyance made by his debtor, is fraudulent and void, and who is seeking by legal process, and a sale under it, to avoid the conveyance, will be arrested and compelled to litigate the title in a court of equity, is a question of importance this case in its present aspect does not present.—*Gunn v. Harrison*, 7 Ala. 585; *Marriott v. Givens*, 8 Ala. 694; *Tucker v. Kenniston*, 47 N. H. 272; *Freeman v. Elmendorf*, 3 Hals. Ch. 475, 655.

It is difficult to state any general rule, which can be relied on, as determining what constitutes such a cloud on the title as will authorize the interference of a court of equity for its prevention. Generally, an action at law, or a suit in equity, will not be entertained until there is an actual disturbance of rights. Exceptions to this rule are, and have been long recognized in a court of equity, and the jurisdiction of that court is often exercised to prevent, as well as to redress injury. An injury reasonably apprehended to an existing right, which, if not prevented, will be irreparable; or an inability to defend and protect himself on common law principles against some act *en pais*, or some legal proceeding of his adversary, will authorize the party to invoke the interference of a court of equity. A mere fear of suit; or that another merely questions one's title, or even asserts a hostile title, will not justify the court in intervening and compelling litigation, which might not otherwise arise.—*Wilkes v. Wilkes*, 4 Edw. Ch. 730; *Scott v. Onderdonk*, 14 N. Y. (4 Kernan) 12.

The true test recognized by the authorities in this State: "would the owner of the property, in an action of ejectment brought by the adverse party, founded upon the deed, be required to offer evidence to defeat a recovery? If such proof would be necessary the cloud would exist; if the proof would be unnecessary, no shade would be cast by the presence of the deed. If the action would fall of its own weight, without proof in rebuttal, no occasion could arise for the equitable interposition of the court."—*Pixly v. Huggins*, 15 Cal. 133; *Moore v. Cobb*, 14 Wis. 217. A court of equity will not interfere to prevent or remove a cloud which can only be shown to be *prima facie* a good title, by leaving the plaintiff's title entirely out of view. It is always assumed, when the court interferes, that the title of the party complaining is affected by a hostile title, apparently good, but

really defective, and inequitable by something not appearing on its face.   Hence, the court never intervenes to cancel or remove as a cloud on the title, a deed void on its face.   Such a deed needs only exhibition to be condemned at law or in equity, and can cast no shade on the title.—*Posey v. Conway*, 10 Ala. 811; *Van Doren v. Mayor*, 9 Paige, 388; *Wiggins v. Mayor*, ib. 23.   A sale of the land of the true owner, as the property of a mere stranger, with whom he is not connected, from whom he does not mediately or immediately trace title, cannot cast a cloud on his title.—*Armstrong v. Sandford*, 7 Minn. 53; *Montgomery v. McEwen*, 9 Minn. 107.

The bill does not show that the husband of the complainant ever had any right or title to the lands, on which the attachments have been levied; nor, that she claims the lands from or through him directly or indirectly.   In all its allegations, it negatives the supposition that he ever had any connection with the title or its conveyance, or the consideration supporting the conveyance.   The complainant herself, with moneys of her statutory separate estate, purchased the lands of a third person, who made a conveyance directly to her. All right or interest in her husband, past or present, is excluded by these allegations.   A sale of the lands under judicial process against the husband, would not affect her title— could cast no cloud on it.   A conveyance derived from such sale would not constitute a title *prima facie* good against her. It would not support an action of ejectment against her, if she offered no evidence to sustain her title, or to show the invalidity of that appearing on the conveyance.   The action would fall of its own weight, though the complainant should be passive, not giving evidence in defense.   We are not aware of any authority which authorizes the interference of a court of equity to prevent such a sale, as the complainant apprehends, which, if made, is incapable of working her any other injury than to arouse unreasoning fears or suspicions of her title in the minds of others.

The equity of every bill must be determined by its allegations, and these must support any decree which may be rendered on it, in favor of the complainant.   It is probable, if the facts appearing in evidence had been averred in the bill, the complainant would have been entitled to relief, for it is shown the grantor of the complainant derived title from the husband, and the purpose on the part of the attaching creditors is to controvert the validity of the several conveyances. For this reason, we suppose the chancellor dismissed the bill without prejudice.

It is scarcely necessary to say that the argument of the appellees, that the complainant had an adequate remedy at

law, by moving the court to set aside the levy of the attachments, or by claiming a trial of the right of property, under the statute, is not tenable. Either would have been an anomaly in judicial proceedings. A motion to set aside the levy of an attachment, or of an execution, can only be made by a party or privy to the process. It is a remedy for the prevention of the abuse of the process by the officer, or the prevention of injury to the parties by his irregularities, or errors, and not a mode of trying the title to the property on which the process may have been levied. A trial of the right to personal property only, not of the right to land, can be claimed under the statute. The defect in the appellants' bill, is, that under its allegations, the levy of the attachments, and threatened sales, are not of injury to her—are incapable of affecting her title. She is in possession, by her vendee, under an executory contract of sale, and that possession, a sale and conveyance under process issuing on judgments rendered on the attachments, would not disturb. The purchaser would be compelled to resort to ejectment to disturb it, and such action would fail, because title in the defendant in the attachment could not be deduced, putting the appellant or her vendee, on proof that it had passed from him to the appellant. A case for equitable interference is not, therefore, presented by the bill.

The decree of the chancellor is affirmed.