# Tyson *v.* Brown.

*Bill in Equity by Heirs, against Purchaser at Administrator's Sale, to recover Lands, with Rents and Profits.*

1. *Decedent's lands; title and rights of heirs.*—On the death of an intestate, the legal title to his lands at once descends to and vests in his heirs at law, subject to the exercise of the statutory powers conferred upon the executor or administrator; and until their estate is divested by the exercise of such special statutory powers, the legal title remains in them as it was in their ancestor, and they may recover the possession by action at law.

2. *Sale of decedent's lands under probate decree; jurisdiction of court.*—The jurisdiction of the Probate Court, to order a sale of lands belonging to an intestate's estate, is purely statutory, and can only be called into exercise by an application in writing, presented by a proper party, and disclosing a state of facts which authorizes an order of sale; and this must be affirmatively shown by the record, and can not be presumed from the order of sale; but, when the jurisdiction is affirmatively shown, the existence of errors and irregularities in the proceedings do not affect the validity of the sale, or the title of the purchaser.

3. *Same.*—Where the order of the court, appointing a day for the hearing of the administrator's petition for an order of sale, describes it as "an application in writing praying for an order to sell certain real estate, therein described, for the purpose of paying the debts due from the estate, upon the ground that the same can not be equitably divided among the heirs of the estate;" while the order of sale, describing it as an application "for an order to sell certain lands for the purpose of paying debts," recites that it is proved, to the satisfaction of the court, "that the personal property, except slaves, is insufficient to pay the debts, and that it is necessary, and will be to the interest of said estate, that the lands should be sold for the purpose of paying the debts, according to the prayer of said application;" and the petition itself is as defective as the orders of the court;—the record does not show that the court had jurisdiction to grant an order of sale.

4. *When heirs may maintain bill against purchaser at administrator's sale, to recover lands, with rents and profits.*—Heirs at law can not maintain a bill in equity, against a purchaser at a sale made under an order of the Probate Court, to recover the possession of lands, with an account of the rents and profits, when the order of sale is void on its face for want of jurisdiction: their legal

title not having been divested by the sale, their remedy at law is adequate and complete.

5. *Removal of cloud from title to land; when bill lies.*—A bill to remove a cloud from the title to land can not be maintained by a party who is out of possession ; nor is a conveyance or decree, which is void on its face, such a cloud on the title as will justify the interposition of a court of equity.

APPEAL from the Chancery Court of Lowndes.
Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 20th October, 1872, by Mary E. Brown, Martha L. Willingham, and others, as the heirs at law of James J. Willingham, deceased, against John A. Tyson, Stephen Hawkins, and Harrison Stephenson, and against George W. McQueen as the administrator of the estate of said J. J. Willingham ; and sought to recover the possession of a tract of land, which had belonged to said Willingham at the time of his death, which had been sold by said George W. McQueen, as the administrator of Willingham, under an order of the Probate Court, and bought at the sale by said Tyson ; together with an account of the rents and profits while in the possession of the defendants.   Said Willingham died on the 31st May, 1862, intestate, and without wife or children, never having married ; and the complainants in this suit, with said McQueen, who administered on his estate, were his brothers and sisters.   Letters of administration on his estate were granted to said McQueen, by the Probate Court of Lowndes, on the 17th June, 1862 ; and he duly qualified, gave bond, and entered on the duties of said trust.   The bill alleged that, on the 2d September, 1863, the Probate Court of said county made an order, reciting therein that said administrator had filed a petition asking an order to sell the lands belonging to the estate, and appointing the 12th October for the hearing of said petition ; that on the 12th October said court granted an order for the sale of said lands, and they were sold by the administrator, on the 9th November, 1863, under said order and decree, and were bought at the sale by said Tyson ; that the administrator reported said sale to the Probate Court, on the 9th December, 1863, and it was confirmed by the court ; that on the 7th October, 1864, the administrator reported to the court the payment of the purchase-money by Tyson, and was ordered by the court to execute a conveyance to said Tyson ; that a deed was accordingly executed to him by said administrator on the 18th November, 1864 ; that Tyson took possession of the lands under his purchase, and afterwards sold portions of the land to Hawkins and Stephenson, his co-defendants, who were in possession when the bill was filed. The bill alleged, also, that the said sale, and the order on

which it was founded, were void—that no proper petition, setting forth a statutory ground for the sale, was ever filed; that no necessity for a sale to pay debts, or for any other lawful purpose, ever existed; that they were infants at the time, and were not notified of the proceedings; that the purchase-money was not in fact paid as reported, &c.; and they specified various errors and irregularities in the proceedings. The prayer of the bill was, that the order of sale, and the sale under it, might be set aside, and declared null and void; that the conveyance to Tyson might be set aside and cancelled; that an account might be taken of the rents and profits of the land; and for general relief, &c.

" Copies of all the proceedings and matters of record in said Probate Court, hereinbefore mentioned—to-wit," the grant of letters of administration; the order appointing a day for the hearing of the petition; the order of sale; the report and confirmation of the sale; the report of the payment of the purchase-money, and the order for the execution of a deed to the purchaser—were annexed to the bill as an exhibit. The order appointing a day for the hearing of the petition, dated September 2, 1863, was in these words: "George W. McQueen, administrator of said estate, having this day filed his application in writing, and under oath, praying for an order and proceedings to sell certain real estate, in said petition described, of the property of said decedent at the time of his death, for the purpose of paying the debts due from said estate, upon the ground that the same can not be equitably divided among the heirs of said estate," &c. The order of sale, dated the 12th October, 1862, was as follows: "This being the day appointed, more than forty days since, for hearing the application of George W. McQueen, administrator in this court of J. J. Willingham, deceased, for an order to sell certain lands, for the purpose of paying the debts due from said estate; now comes the said administrator, and moves the court that said application be granted, and also comes J. H. Cook," guardian *ad litem* for the infant heirs, and the other parties in interest, " and it having been proved to the satisfaction of the court, by the oaths of ———— and ————, who are disinterested witnesses, and whose testimony has been taken by deposition, upon direct and cross interrogatories, as in chancery cases, and whose testimony has been filed of record, that the personal property, except slaves, is insufficient to pay the debts of said estate, and that it is necessary, and will be to the interest of said estate, that the lands, described as follows," &c., " should be sold for the purpose of paying the debts of said estate, according to the prayer of

said application; it is therefore ordered," &c., that the lands be sold.

Tyson filed an answer, in which he incorporated a demurrer to the bill, assigning as causes of demurrer—1st, "that the bill contains no equity;" 2d, "that the complainants, if entitled to relief, have a full and complete remedy at law." Hawkins and Stephenson each answered, claiming to be a *bona fide* purchaser for valuable consideration without notice. Tyson afterwards filed a cross-bill, alleging that the purchase-money paid by him was applied in paying the debts of the estate, and asking a credit for the amount so paid and used. The record does not show any action by the court on the demurrer to the bill; but, on final hearing, on pleadings and proof, the chancellor held the sale of the lands void, and that the complainants were entitled to relief; and he dismissed the cross-bill. From this decree Tyson appeals, and here assigns as error—1st, that the chancellor erred in holding the sale of the lands void; 2d, in dismissing the cross-bill.

CLOPTON & GRIFFIN, for appellants.

GIRARD COOK, *contra*.

BRICKELL, C. J.—The appellees, as heirs at law of James J. Willingham, deceased, filed the original bill, to recover the possession of lands descended, and the rents and profits thereof, of which the appellants were in possession, claiming title through a sale and conveyance made by the administrator of Willingham, under a decree of the Court of Probate of Lowndes county. The whole ground of relief is the asserted illegality, and consequent invalidity, of the decree of the Court of Probate ordering the sale of the lands. A demurrer was interposed by the appellant, Tyson, assigning as cause that the complainants had a plain and adequate remedy at law. We may dismiss all other considerations than that of the question presented by the demurrer, which is directed to the jurisdiction of the court of equity.

By the common law, and under the statute of descents, immediately on the death of an intestate, his lands descend to his heirs at law: they are clothed with the estate residing in him, and are entitled to the possession, if it was vested in him. The administrator does not succeed to the estate, or the possession, though he may, by exercising the statutory power of renting, or by proper proceedings in the Court of Probate, obtaining an order to sell for the payment of debts, or for the purpose of making distribution to the heirs, intercept their right to the possession, and divest them, by a sale

under such order, of the estate they take by descent.—*Masterson v. Girard*, 10 Ala. 60; *Chighizola v. LeBaron*, 21 Ala. 406; *Br. Bank Mobile v. Fry*, 23 Ala. 770. The jurisdiction of the court to order a sale is purely statutory; and it can only be called into exercise, when a proper party presents to the court an application, in writing, disclosing the existence of a state of facts, upon which the court may order a sale. Whether the estate the heir takes by descent has been divested by a sale under the order of the court, depends always upon the inquiry, whether the record of the court shows affirmatively its jurisdiction. The jurisdiction must appear from the record—it can not be presumed, or intended, from the decree or order of sale. When the jurisdiction appears, the proceedings may abound with irregularities, which would compel on appeal a reversal of the decree, without affecting the title of the purchaser. The decree is the source of title, and of the divestiture of the estate of the heir; and while irregularities will not vitiate it, except on error, if jurisdiction does not appear, it is void, a mere nullity, working no interruption of the estate of the heir, and conferring no right on the purchaser.—*Bishop v. Hampton*, 15 Ala. 761; *Wyman v. Campbell*, 6 Port. 219.

The record of the Court of Probate, as it is exhibited by the transcript introduced in evidence, does not affirmatively disclose the jurisdiction of the court to order a sale of the lands. The estate descending to the appellees has not been divested; and it is the fee simple, pure and absolute.

In the absence of fraud, of which a court of equity can alone take cognizance—a fraud not of the character cognizable at law—or of accident, or mistake, or of a necessity for discovery, a court of equity will not intervene, to establish and enforce a legal title to lands, or to change the possession, and transfer it to one whose title may be disputed. The jurisdiction of courts of law, in such a case, is clear and undoubted, and the remedies they furnish are plain, adequate, and complete, securing to the party all the rights and all the redress to which he is in justice entitled. The order for the sale of the lands being void, working no change in the title of the complainants, conferring no right to the possession on the defendants, the bill is simply a real action for the recovery of the possession and the mesne profits while it was wrongfully withheld. There is no authority which will justify a court of equity in entertaining jurisdiction, establishing the right of the complainants to the possession, and compelling payment of the rents and profits. This is the appropriate function of a court of law, with which a court of equity can not interfere,

in the absence of circumstances rendering the remedy at law inadequate.

The prevention or the removal of clouds on the title to real estate is, certainly, a recognized ground of equitable jurisdiction. The jurisdiction, in its nature, is precautionary and preventive—the purpose is protection against anticipated wrongs or mischiefs, and not to afford redress for them after they have occurred.—1 Story's Eq. § 701. When a party is in possession, and there is an outstanding conveyance, which casts a cloud on his title ; or a sale and conveyance threatened, which, if consummated, would create a cloud ; a court of equity may intervene to remove the one, or to prevent the other.—*Rea v. Longstreet*, 54 Ala. 291. Having possession, there is no remedy at law, to which the party can resort, to test the strength of the apparent title which exists, or which is about being created, and which may at any time be made the foundation of an action for a disturbance of his possession, and which embarrasses the alienation of the estate. But, if he is not in possession, there is no necessity for a resort to a court of equity, to remove or to prevent the cloud on the title. The remedy at law, for the recovery of possession, to which he may resort, testing the strength of the title, is adequate, and excludes the jurisdiction of a court of equity.—*Daniel v. Stewart*, 55 Ala. 278 ; *Orton v. Smith*, 18 How. 263 ; *Barron v. Robbins*, 22 Mich. 35.

Nor will the court, in any case, interfere to avoid sales, or to cancel conveyances, which, of themselves, afford inherent, intrinsic evidence of their own illegality and invalidity. There is no reason for a judicial interference ; for such sale, or conveyance, bearing the evidence of its invalidity, can not create a cloud on the title, nor diminish the security of the true owner. It is not capable of being used as an instrument of vexatious litigation ; and the lapse of time can not endanger the means of defense against it, if rights under it should be asserted.—1 Story's Eq. § 700 ; *Rea v. Longstreet, supra ; Daniel v. Stewart, supra ; Kellam v. Richards*, 56 Ala. 238 ; *Posey v. Conway*, 10 Ala. 811.

The complainants were not in possession of the lands ; and if they had been, the sale and conveyance under the decree of the Court of Probate was void. The illegality vitiating them appeared on the face of the record of the Court of Probate, which must have been produced as the very source and foundation of any right or title claimed under them ; and its exhibition only was necessary to ensure its condemnation. They create no cloud on the title of the complainants, and embarrass no legal remedies to which they may resort for the recovery of possession and mesne profits.

The demurrer was well taken, and should have been sustained. The decree of the chancellor must be reversed, and a decree here rendered, dismissing the original bill, at the costs of the appellees in this court, and in the Court of Chancery.

STONE, J., not sitting, having been of counsel.